[No. 18360-9-II. Division Two. August 2, 1996.]

THE CITY OF TACOMA, *Respondent*, v. JOSEPH R. BISHOP, *Petitioner*.

---

*Lise Ellner* of *Department of Assigned Counsel*, for petitioner (appointed counsel for appeal).

*Christopher S. Cicierski*; and *Robi Jenkinson, City Attorney*, and *Heidi A. Horst* and *Michael L. McKenzie, Assistants*, for respondent.

HOUGHTON, J. — Joseph R. Bishop appeals his conviction for two counts of indecent liberties on grounds that the trial court violated his constitutional right to counsel by requiring him to proceed to trial without counsel and without a valid waiver of that right. Finding that Bishop neither waived nor forfeited his right to counsel by his dil-

atory conduct, and that the municipal court erred in requiring him to represent himself at trial without a waiver or proper warnings, we reverse and remand.

## FACTS

Bishop was charged with two counts of indecent liberties against C.P., the 10-year-old daughter of his half-sister. Bishop was arraigned in Tacoma Municipal Court on April 25, 1990, and trial was set for June 27, 1990. Bishop received his first Notice of Case Setting on April 25, 1990, which tentatively appointed the Department of Assigned Counsel (DAC) to represent him, subject to his eligibility. This notice states: "IT IS YOUR RESPONSIBILITY TO CONTACT THE ASSIGNED COUNSEL'S OFFICE IN PERSON IMMEDIATELY." Your failure to do so will result in that office withdrawing as your legal counsel in this matter." The notice also provides DAC's address and phone number.

Bishop informed the trial court on June 25, 1990, that he had not contacted anyone at DAC. Trial was set over until June 29, 1990. On June 29, Bishop again appeared without counsel, and the trial was set for October 4, 1990.

Bishop appeared on October 4, 1990, without counsel and requested a continuance in order to obtain counsel. When asked his reasons for the motion, Bishop said that someone at DAC told him they needed two weeks to arrange for appointed counsel. He also stated that he was unable to find an attorney because he could not take time off from work and was having personal problems.

The City responded that Bishop had been granted a continuance in June in order to contact DAC and that Bishop had not exercised due diligence in obtaining counsel. The City also stated that the 10-year-old witness was frightened, had missed a school test to be in court that day, and that she might not be available at a future date because her mother said they might have to move.

The trial court denied Bishop's motion for a continu-

ance. The trial court acknowledged that DAC needed two weeks to process paperwork and stated, "but two weeks from the 25th of June to the 4th of October doesn't add up." The trial court also told Bishop, "[DAC is] not your mother and father. They have no responsibility to you unless you make an active contact." The trial court denied Bishop's motion for a continuance, and proceeded to trial.

The City called its only witness, C.P. Bishop called his sister, Barbara Pollock (C.P.'s mother), and his girlfriend, Sharon Cook, as a character witness. Bishop did not testify. The trial court found Bishop guilty on both counts.

Bishop appealed to the superior court. DAC appeared on behalf of Bishop, arguing that Bishop was denied his right to counsel when he was required to proceed to trial without representation and without either an express or implied waiver of that right.

The City responded that Bishop had a fair opportunity to obtain counsel of his choice, but was dilatory and failed to do so. The City argued that if Bishop could get to the courthouse, he could have walked the two blocks to DAC after being instructed several times to contact them over the course of six months. The City argued further that the *Leavitt*[1] balancing test (balancing conflict between denial of continuance and right to counsel) applied, pointing to previous continuances and inconvenience to the court and the witness as reasons for denying the continuance.

The superior court denied the appeal and stated, "I suppose I should put a label on his conduct and I will label it dilatory . . . ." The court expressed concern about the future availability of the witness and the potential for Bishop to "paralyze" the court. The court noted further that the City had taken all the necessary precautions to see that Bishop had counsel, but Bishop had not taken advantage of them, stating, "I think we are in the ball park where you lead the horse to water but you can't make him drink."

---

[1]*United States v. Leavitt*, 608 F.2d 1290 (9th Cir. 1979).

The superior court found that the municipal court denied Bishop's motion for a continuance for failure to demonstrate due diligence in obtaining counsel, and that Bishop did not waive his right to counsel. The court concluded that Bishop was dilatory in obtaining counsel, and that because of his dilatory conduct, the municipal court did not err in requiring him to proceed to trial without representation. This court granted Bishop's motion for discretionary review.

## ANALYSIS

Bishop contends that the trial court violated his right to counsel by forcing him to proceed to trial unrepresented and without a knowing, intelligent, and voluntary waiver of that right. The superior court found that Bishop did not waive his right to counsel. Nevertheless, it concluded that the trial court did not err in requiring Bishop to proceed to trial without representation.[2] Therefore, the issue is whether a defendant may waive his right to counsel by dilatory conduct, absent an affirmative showing that the court advised him or her of the risks and consequences of proceeding pro se.

A defendant in a criminal prosecution has a right to assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22 (amend. 10). Indigent defendants charged with felonies, or misdemeanors involving potential incarceration, are entitled to appointed counsel. *State v. Osborne*, 70 Wn. App. 640, 643, 855 P.2d 302 (1993); CrR 3.1(d)(1).

The right to counsel may be waived, but a waiver must be knowing, voluntary, and intelligent. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 208-09, 691 P.2d 957 (1984). Washington applies the *Faretta* test for determining a valid waiver of the right to counsel, which requires that

---

[2]Bishop does not challenge the superior court's finding that he failed to demonstrate due diligence in obtaining counsel or that his conduct was dilatory. Unchallenged findings of fact are treated as verities on appeal. *State v. Gentry*, 125 Wn.2d 570, 605, 888 P.2d 1105, *cert. denied*, 116 S. Ct. 131 (1995); *State v. Rivera*, 76 Wn. App. 519, 520, 888 P.2d 740 (1995).

the defendant be made aware of the risks and disadvantages of self-representation, with an indication on the record that " 'he knows what he is doing and his choice is made with eyes open.' " *Acrey*, 103 Wn.2d at 209 (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (citation omitted)); *Osborne*, 70 Wn. App. at 644. Preferably, there should be a colloquy on the record informing the defendant of the nature of the charge, the maximum penalty, and technical rules he must follow in presenting his case. *Acrey*, 103 Wn.2d at 211. In the absence of a colloquy, the record must otherwise indicate that the defendant was aware of the risks of self-representation. *Acrey*, 103 Wn.2d at 211.

Although a defendant has an absolute right to counsel, that right does not allow a defendant to "delay a trial either deliberately or inadvertently because he has made little effort to engage an attorney." *State v. Johnson*, 33 Wn. App. 15, 22, 651 P.2d 247 (1982), *review denied*, 99 Wn.2d 1001 (1983) (quoting *United States v. Merriweather*, 376 F. Supp. 944, 945 (E. D. Pa. 1974)).

In *Johnson*, the defendant was charged with burglary. He was advised to contact the Office of Public Defense if he needed assigned counsel, and a public defender appeared at arraignment. Johnson appeared without counsel at his six subsequent court appearances before trial. Johnson explained that he was told he was ineligible for appointed counsel because of his income, but that he could not afford an attorney and wanted appointed counsel. The court made repeated attempts to determine whether Johnson intended to proceed pro se and the efforts he made to obtain counsel, and continuances were granted in order to allow him to obtain counsel. Johnson eventually indicated that he intended to proceed pro se, and upon further inquiry repeated that he wanted an attorney but could not take time from work to find one.

The court ultimately informed Johnson that if he did not obtain counsel for trial, he would have to proceed without an attorney. Johnson appeared for trial without

counsel, and trial was continued until that afternoon to allow him to obtain counsel. Johnson returned without counsel. The court stated that Johnson had sufficient time to find an attorney and it appeared he had no intention of hiring one. Trial proceeded with Johnson unrepresented.

The court held that Johnson's "almost complete inaction," which led to his failure to obtain counsel, constituted a "continuing pattern of dilatory conduct . . . undertaken to slow the administration of justice and postpone his ultimate day of reckoning," and that he knowingly and intelligently waived his right to counsel despite his assertions that he wished to be represented. *Johnson*, 33 Wn. App. at 22-23. The court cited with approval *Spevak v. United States*, 158 F.2d 594 (4th Cir. 1946), *cert. denied*, 330 U.S. 821 (1947), which stated: "It seems clear that an accused who is able to employ counsel and fails to do so after being afforded opportunity, thereby waives the right and may not urge lack of counsel as excuse for delay." *Johnson*, 33 Wn. App. at 24 (quoting *Spevak*, 158 F.2d at 596). The court determined that the trial judge had explained the right to counsel and the consequences of waiver. *Johnson*, 33 Wn. App. at 22. The court also noted that Johnson was advised he should obtain counsel and how to do so, and that he was given sufficient time to make arrangements, but never took advantage of this help or time to find counsel. The court further stated that Johnson's actions indicated a "clear choice on his part not to be represented by counsel at trial, and he may not now disclaim the consequences of his choice." *Johnson*, 33 Wn. App. at 24.

*United States v. Goldberg*, 67 F.3d 1092 (3rd Cir. 1995), is instructive. In *Goldberg*, the defendant, while serving a prison sentence, forged the signature of a magistrate-judge that would give him unlimited access to the law library. His assigned attorney filed motions, but the defendant later filed a motion seeking a continuance to obtain new counsel or proceed pro se. The court ultimately concluded that the attorney was providing adequate representation,

gave the defendant the choice of being represented by the attorney or proceeding pro se, and the defendant chose to remain with the attorney. The defendant then revealed he had the funds to retain private counsel. The attorney requested permission to withdraw, claiming that the defendant had threatened his life and demanded he engage in unethical conduct, and his request was granted. The defendant was then warned that unless he retained an attorney who entered an appearance, the trial would proceed with him acting pro se. On the first day of testimony, the defendant had not retained counsel. He requested a continuance, arguing he was unable to retain an attorney and was incapable of proceeding pro se. The trial court denied the continuance, and determined that the defendant had manipulated his right to counsel in order to disrupt and delay his trial.

The defendant claimed his Sixth Amendment right to counsel was violated when the court forced him to proceed pro se, and challenged the court's conclusion that he "waived" the right through dilatory conduct, arguing that his conduct was not so dilatory as to warrant the drastic remedy of forcing him to proceed pro se. The Government conceded that there was no colloquy on the record of a knowing, voluntary waiver or explanation of the risks of self-representation.

The Third Circuit discussed the concepts of " 'waiver,' " " 'forfeiture,' " and " 'waiver by conduct.' " First, it defined waiver as an " 'intentional and voluntary relinquishment of a known right.' " *Goldberg*, 67 F.3d at 1099. Waiver must be knowing, voluntary and intelligent, usually indicated by an affirmative, verbal request. When a defendant requests permission to proceed pro se, the court must ensure the waiver is voluntary, and that the defendant is aware of the risks of self-representation as a prerequisite to a valid waiver. *Goldberg*, 67 F.3d at 1099.

The concept of "forfeiture" lies at the opposite end of the spectrum. *Goldberg*, 67 F.3d at 1100. The court explained that "forfeiture results in the loss of a right

regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Goldberg*, 67 F.3d at 1100. Forfeiture can result even though the defendant was not warned about the consequences of his actions or the risks of self-representation, and because of its harsh results requires extremely dilatory conduct. *Goldberg*, 67 F.3d at 1100, 1101.

The court described "waiver by conduct" as a "hybrid situation," which combines elements of waiver and forfeiture. *Goldberg*, 67 F.3d at 1100. "Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel." *Goldberg*, 67 F.3d at 1100. Contrary to forfeiture, "waiver by conduct" requires that the defendant be warned about the consequences of his actions, including the risks of proceeding pro se, and can be based upon conduct less severe than that constituting forfeiture. *Goldberg*, 67 F.3d at 1101.

The *Goldberg* court determined that the district court's decision was based upon notions of forfeiture rather than waiver by conduct in spite of its references to "waiver." *Goldberg*, 67 F.3d at 1102. The court held that although the defendant's conduct was sufficiently dilatory to constitute waiver by conduct, there was no valid waiver because the trial court failed to inform the defendant of the risks and disadvantages of self-representation. *Goldberg*, 67 F.3d at 1102-03. However, the court also held that the facts did not support misconduct serious enough to result in forfeiture. *Goldberg*, 67 F.3d at 1102.

Here, Bishop's conduct, like the defendant's in *Johnson*, could be characterized as "almost complete inaction" if not complete inaction, and dilatory. However, no colloquy was conducted informing Bishop of the risks of self-representation, and the record does not otherwise indicate he was aware of these risks. Thus, under the reasoning of *Osborne*, *Johnson*, and *Goldberg*, Bishop neither expressly nor impliedly through his conduct waived his right to counsel.

Our next inquiry is whether Bishop's conduct was sufficiently dilatory to result in the severe sanction of a forfeiture of his right to counsel. Having received three Notices of Case Setting, Bishop was aware of his right to counsel, was informed he might qualify for appointed counsel, and that it was his responsibility to contact DAC. He appeared three times without an attorney after arraignment and explained that he was unable to obtain counsel, and he was given additional time in order to contact DAC.

As noted above, the superior court's finding of dilatory conduct is treated as a verity on appeal. We acknowledge that a defendant's egregious misconduct may warrant forfeiture of the right to counsel. Although we do not condone Bishop's conduct, the facts do not support misconduct serious enough to require forfeiture, and we decline to hold that Bishop forfeited his right to counsel by failing to obtain counsel before trial. We hold that the municipal court erred in requiring Bishop to proceed to trial unrepresented, without first warning him of the dangers and consequences of proceeding pro se.

We recognize that Bishop's inaction could potentially paralyze the trial court and put it in the position of appearing to deny the right to counsel. *See United States v. Allen*, 895 F.2d 1577, 1578 (10th Cir. 1990) (right to make knowing and intelligent waiver does not give defendant license to use means whereby the court, by attempting to move business along, appears to arbitrarily deny right to counsel). We also acknowledge that a defendant may not manipulate the right to counsel in order to delay and disrupt trial. *Johnson*, 33 Wn. App. at 22.

However, the trial court's hands are not completely tied. The trial court may nevertheless require a defendant to proceed pro se, provided it informs the defendant that his or her dilatory conduct will be deemed a waiver of the right to an attorney and advises him or her of the dangers and consequences of proceeding pro se. The court may also refuse to grant further continuances for purposes of

obtaining counsel as long as it properly advises the defendant of the consequences.

Because we remand for new trial, we emphasize that the trial court must advise a defendant at the time of arraignment or when counsel is appointed of his right to an attorney and the consequences of proceeding pro se if he should choose to do so. *See State v. DeWeese*, 117 Wn.2d 369, 378, 816 P.2d 1 (1991); *Acrey*, 103 Wn.2d at 211.

The City asserts that the issue is not whether Bishop waived his right to counsel and it agrees he did not do so. Rather, it frames the issue as whether the trial court abused its discretion by denying the continuance and requiring Bishop to proceed to trial without counsel. It argues that if a defendant's conduct is dilatory and hinders the effective administration of justice, a court may deny a continuance even if it results in the defendant's being unrepresented at trial. Under the City's analysis, a defendant's Sixth Amendment right to counsel could be circumvented altogether, and we address it in order to avoid inconsistent results.

In general, a trial court's decision granting or denying a continuance of trial lies with the sound discretion of the court, and will not be disturbed on appeal absent a showing that the trial court failed to exercise its discretion or manifestly abused its discretion. *State v. Miles*, 77 Wn.2d 593, 597-98, 464 P.2d 723 (1970).

The trial court considers various factors when exercising its discretion including: diligence, due process, the need for an orderly procedure, the possible impact on the trial, and whether prior continuances were granted. *State v. Early*, 70 Wn. App. 452, 458, 853 P.2d 964 (1993), *review denied*, 123 Wn.2d 1004 (1994). Denial of the motion will not be disturbed without a showing that the defendant was prejudiced or that the result of the trial would have been different had the motion been granted. *Early*, 70 Wn. App. at 458. A motion for continuance to secure or replace counsel may be denied " 'where the accused's lack of representation is attributable to his own lack of dili-

gence in procuring or replacing counsel . . . .' " *Early*, 70 Wn. App. at 458-59 (quoting 12 WASH. PRAC., *Criminal Practice and Procedure* § 1913, at 375).

The Ninth Circuit has recognized that when a defendant engages in dilatory conduct which hinders the "efficient administration of justice," a court may constitutionally deny a continuance even when the defendant is unrepresented at trial as a result. *United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir. 1979). When a defendant's Sixth Amendment right to counsel conflicts with the trial court's discretionary power to deny a continuance, a balancing test is applied to determine whether the trial court's decision was fair and reasonable. *Leavitt*, 608 F.2d at 1293. These factors include: inconvenience to the witnesses, court, counsel and parties; whether the request for delay is based on legitimate reasons; whether the delay is the defendant's fault; and whether denial of the continuance will prejudice the defendant. *Leavitt*, 608 F.2d at 1293.

In *Leavitt*, the defendant was convicted of driving in a careless manner in a national park. He was advised to seek counsel, but three months later he still had not obtained counsel. The defendant was granted a continuance and contacted a federal public defender three days before the new trial date. The trial court denied the attorney's request for a continuance. On the day of trial, the trial court denied the renewed request, but allowed the attorney to withdraw. The defendant was required to proceed without counsel, but was granted a continuance to prepare his defense. The public defender re-entered the case and filed motions but did not call any witnesses.

The court held that the trial court did not err in denying the continuance. *Leavitt*, 608 F.2d at 1294. The court reasoned that the defendant knew of the need to obtain counsel four months before the original trial date, he was granted one continuance in order to obtain counsel, producing witnesses several times would be costly, the issues were not particularly complex, and that although the de-

fendant was allowed more time to prepare a defense, he introduced no witnesses or evidence. *Leavitt*, 608 F.2d at 1294.

In *United States v. Kelm*, 827 F.2d 1319 (9th Cir. 1987), the defendant was indicted on tax charges. He was advised of his right to counsel, and he stated he was attempting to retain counsel and did not want a court-appointed attorney. Trial was rescheduled while the court conducted hearings regarding the defendant's efforts to retain counsel. The defendant was ultimately told that if he did not waive his right to counsel following this hearing, he would be given two weeks to secure counsel, and that if he failed to retain an attorney, he would be deemed to have waived his right to counsel. At the hearing, the defendant (appearing with appointed standby counsel) told the court he was unable to retain an attorney, but did not want to waive his right to one. The trial court found the defendant, because of his stringent requirements for an experienced tax attorney, hindered and deterred counsel selection. The defendant was given another opportunity to obtain counsel, and was told that failure to do so would be deemed a waiver. Trial proceeded, with the defendant assisted by standby counsel. On the second day of trial, the defendant requested court-appointed counsel. The request was denied on grounds that he was not entitled to appointed counsel and numerous continuances had been granted to afford him an opportunity to retain counsel.

On appeal, the court held that the defendant's persistent refusal to accept an appointed attorney, to retain his own attorney, or to expressly waive his right to counsel hindered the " 'efficient administration of justice,' " and that the district court's refusal to grant a further continuance was fair and reasonable. *Kelm*, 827 F.2d at 1322 (quoting *Leavitt*, 608 F.2d at 1293). The court also held that because the record established that Kelm manipulated his right to counsel for purposes of delay and that Kelm *understood the dangers and disadvantages of self-representation, having "elected to defend himself with his*

*'eyes open'* " (emphasis added), the trial court was justified in determining Kelm's actions constituted a waiver of his right to counsel. *Kelm*, 827 F.2d at 1322 (quoting *Faretta*, 95 S. Ct. at 2541).

Here, Bishop was neither attempting to seek new counsel nor requesting a particular attorney, rather, he had never obtained counsel and requested a continuance in order to obtain counsel. The municipal court considered Bishop's efforts to seek counsel, the prior continuances that had been granted in order to allow him to obtain counsel, and the risk of losing the witness when it denied the continuance motion. However, the court neither warned Bishop that his conduct would be deemed a waiver of the right to counsel nor informed him of the consequences of waiving that right when it easily could have done so. Moreover, under either the state standard or the *Leavitt* balancing test, Bishop was prejudiced when he was forced to proceed to trial without counsel. *See City of Seattle v. Ratliff*, 100 Wn.2d 212, 219, 667 P.2d 630 (1983) (denial of right to counsel is conclusively presumed to be prejudicial); *see also Osborne*, 70 Wn. App. at 640 (defendant requested continuance in order to obtain new appointed counsel but did not waive right to counsel in doing so, and trial court erred in requiring defendant to represent himself at trial).

We hold that the municipal court abused its discretion when it denied the request for a continuance and ordered Bishop to proceed to trial pro se, without warning him of the consequences of doing so. We hold further that when a defendant requests a continuance in order to obtain counsel, or when denial of a continuance will result in the defendant proceeding pro se, the trial court must warn the defendant that failure to obtain counsel will be deemed a waiver of the right to counsel, and inform him or her of the consequences of proceeding pro se.

Reversed and remanded for proceedings set forth herein.

SEINFELD, C.J., and ARMSTRONG, J., concur.