IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 12, 2008 Session

**STATE OF TENNESSEE v. TOMMY HOLMES**

**Appeal from the Criminal Court for Shelby County**
**No. 02-02082     James C. Beasley, Jr., Judge**

---

**No. W2008-00759-CCA-R3-CD  - Filed March 2, 2009**

---

The defendant, Tommy Holmes, was convicted by a Shelby County jury of aggravated rape, a Class A felony, and sentenced by the trial court as a violent offender to twenty-four years in the Department of Correction.  He raised a number of issues in his original direct appeal, including whether the trial court erred in finding that he had forfeited his right to trial counsel.  We found no merit in the other claims, but remanded to the trial court with instructions to hold an evidentiary hearing with respect to the forfeiture of counsel issue.  See State v. Tommy L. Holmes, No. W2006-00236-CCA-R3-CD, 2007 WL 1651876 (Tenn. Crim. App. June 7, 2007), perm. to appeal denied (Tenn. Sept. 17, 2007).  After holding that hearing, the trial court entered an order finding that the defendant had forfeited the right to counsel by physically assaulting his trial counsel.  The defendant now appeals from that order, arguing that his behavior was not sufficiently egregious to warrant the denial of his Sixth Amendment right to counsel.  Following our review, we affirm the trial court's order finding that the defendant waived his right to counsel.  Having previously found no merit to the defendant's other issues raised on direct appeal, we also affirm his judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined. D. KELLY THOMAS, JR., J., filed a dissenting opinion.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Tommy Holmes.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Our first direct appeal opinion provides a synopsis of the circumstances that led to the defendant's being required to represent himself at trial:

Approximately one week before the defendant originally was scheduled to be tried, on March 27, 2003, at an impromptu hearing at which the defendant was present, appointed counsel requested the trial court's permission to withdraw from the case, saying that the defendant had been verbally and physically abusive:

On two occasions, Your Honor, including this morning -- the reason I had [the defendant] brought up was so I could visit with him up here. He has threatened physical violence in the past at our last meeting. Today he put his hands on me and I had to leave. He punched me in the face with his finger, knocked my glasses off. And I don't believe that I can represent [the defendant]; so I'm asking the Court to relieve me.

The trial court permitted the withdrawal, explaining that it accredited appointed counsel's allegations, that there would not be a hearing on the matter, and that the court would not appoint another lawyer to represent the defendant[.]

Id. at *3. During a May 15, 2003, hearing, the defendant asserted that appointed counsel's allegations were false and requested that the trial court appoint another lawyer. Id. at *4. The trial court refused, reiterating that it accredited the statements of appointed counsel. The defendant responded that there were other individuals present at the time the alleged incident took place, but the trial court nonetheless ruled "that there would not be a hearing and that the case would 'proceed as is.'" Id.

When the case came up on appeal, we noted that a trial court may properly require an indigent defendant to proceed *pro se* upon a finding that he has forfeited his constitutional right to assistance of counsel by being physically abusive to his trial counsel. Id. at *5. We further noted, however, that we "must have an adequate record on which to evaluate such a finding." Id. We, therefore, remanded the case to the trial court to hold an evidentiary hearing on the issue:

In this matter, the trial court did not conduct a hearing, at which the defendant would have been allowed both to testify and present witnesses on his behalf, before concluding that he had waived his right to counsel. Rather, it is apparent from the record that the trial court accredited appointed counsel's account of what transpired at their meeting the morning of the withdrawal, but in light of the defendant's assertions that there were witnesses to the altercation, we must remand for consideration of this issue. We note that the State has the burden of establishing that the defendant forfeited his right to counsel.

Id. at *6.

At the March 17, 2008, hearing on remand, appointed counsel testified that he worked for the public defender's office and was assigned to represent the defendant. He stated that, as he was leaving his next to last meeting with him, the defendant said in a threatening manner, "I know how to get rid of you." The physical encounter between the men occurred when counsel next met with the defendant approximately two weeks before the trial was scheduled to begin. Counsel described the incident:

> We were . . . talking back in the tank and [the defendant] asked me well do you believe I'm innocent. And I said it really doesn't matter what I believe. He jumped up, stood over me and said you're going to do what I tell you to do, pushed his finger at me and knocked my glasses, not all the way off but askew.

Counsel testified that he and the defendant were alone in the interview room, with the door shut, when the incident occurred. He did not know whether anyone was in the hallway at the time. The defendant did not apologize for his actions. Counsel said he reacted by gathering his books, leaving the room, and immediately reporting the incident to the trial judge. He stated that he was frightened by the defendant's actions and had never had anything like that happen with a client either before or since.

On cross-examination, counsel acknowledged that the defendant did not take a swing at him. As he recalled, the defendant uttered an expletive as counsel left but did not try to follow him from the room. He acknowledged that the defendant made contact with his eyeglasses rather than his face but said that the defendant's knocking his glasses askew hurt him and caused the glasses to break at the temple. He further acknowledged that his glasses did not fall to the floor. He said, however, that he believed they were knocked off his ear.

In response to questioning by the trial court, appointed counsel explained that the recent murder of attorney Robert Friedman and the incidents that occurred during the Tony Carruthers trial made him take seriously the defendant's threat that he knew how to get rid of him. He said he could not recollect any problems or disagreements with the defendant prior to the incidents at issue in the case.

Shelby County Sheriff's Deputy James Lafferty, testifying on the defendant's behalf, said that he was the bailiff in Division 5 and opened the door to allow counsel to enter the holding tank to meet with the defendant. He said that he opened the door to the room again when he heard the sound of loud voices and a chair sliding across the floor. When he did so, counsel, who appeared red-faced and flustered, pushed out past him "fixing his glasses [and] saying let me out of here." Officer Lafferty testified that there was no one else in the room with the defendant and counsel and no one besides himself in the hallway at the time. He believed that counsel told him that the defendant had slapped him and knocked his glasses off. Counsel, however, declined to press charges, saying that the defendant "was in too much deep water as it is" and that he "just want[ed] off the case." The defendant made no attempts to follow counsel and, as Officer Lafferty recalled, was sitting in a chair when Officer Lafferty entered the room.

The defendant did not testify.

At the conclusion of the hearing, the trial court found that the State had met its burden of demonstrating that the defendant had forfeited his Sixth Amendment right to counsel by physically striking his appointed counsel. The trial court issued oral findings of fact at the conclusion of the hearing, which it later reduced to a written order entered on March 19, 2008. Thereafter, the defendant filed a timely appeal to this court.

## ANALYSIS

The defendant contends that the incident as described by appointed counsel at the remand hearing does not constitute the type of physical assault that warrants a finding that he forfeited his constitutional right to counsel. He asserts that counsel's description of the incident at the remand hearing, with the defendant striking his eyeglasses with his finger and knocking them askew rather than off his face, is "quite different" from the accounts he provided to Officer Lafferty and to the trial judge immediately after the incident occurred. The defendant argues that "[h]ad there been an assault on [appointed counsel,] Officer Lafferty would have reported it and su[b]mitted charges against the inmate," and suggests that counsel's reluctance to press charges stemmed from his awareness that the incident was not serious enough to constitute an assault. The State argues that the trial court did not abuse its discretion in finding that the defendant forfeited his right to counsel by his unprovoked physical assault of appointed counsel. We agree with the State.

An indigent criminal defendant's right to the assistance of appointed counsel at trial is guaranteed by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. A criminal defendant can, however, forfeit that right by engaging in extremely serious misconduct. See State v. Carruthers, 35 S.W.3d 516, 548 (Tenn. 2000) (citing United States v. Goldberg, 67 F.3d 1092, 1102 (3d Cir. 1995); City of Tacoma v. Bishop, 920 P.2d 214, 218 (Wash. Ct. App. 1996)). A defendant who has engaged in such extremely serious misconduct may forfeit his right to counsel "even though [he] was not warned of the potential consequences of his or her actions or the risks associated with self-representation." Id. In such circumstances, "forfeiture results regardless of the defendant's intent to relinquish the right and irrespective of the defendant's knowledge of the right." Id.

As an initial matter, we disagree with the defendant's contention that counsel's account at the remand hearing was "quite different" from the one he provided to the trial judge immediately after the incident occurred. Counsel told the trial judge that the defendant had threatened physical violence against him at a previous meeting and had just then punched him in the face with his finger, knocking his glasses off. Notably, he did not use the word "slap" or say that his glasses had been knocked all the way to the floor. He testified in a similar vein at the remand hearing, stating that the defendant at the earlier meeting threatened that he knew how to get rid of him, which he interpreted as a physical threat, and at their last meeting pushed his finger in his face, knocking his glasses askew on his face.

Officer Lafferty believed that counsel told him that the defendant had slapped him. It is clear from his testimony, however, that he was not absolutely certain that those were the exact words that counsel used. Furthermore, even if counsel, in the stress of the moment, referred to the defendant's

action as a "slap" to Officer Lafferty, he refrained from using such language when he appeared before the trial judge, instead describing the assault as a finger punch to the face.

As we observed when this case first came before us on appeal, a defendant's unprovoked physical battery of his attorney qualifies as the type of extremely serious misconduct that can result in the forfeiture of his right to the assistance of counsel. See United States v. Leggett, 162 F.3d 237, 250 (3d Cir. 1998). The defendant in Leggett engaged in an unprovoked physical attack on his attorney in the courtroom, punching him in the head and then straddling his body and choking, scratching, and spitting on him. Id. at 240. In upholding the district court's finding that the defendant had forfeited his right to counsel by such actions, the Third Circuit Court of Appeals noted that the Eleventh Circuit Court of Appeals upheld a finding of forfeiture based on a defendant's mere verbal abuse of his attorney:

> To forfeit the right to legal representation, a defendant must engage in "extremely serious misconduct." [Goldberg, 67 F.3d] at 1102. For example, in [United States v.] McLeod, [53 F.3d 322 (11th Cir. 1995)], a defendant's attorney testified that the defendant was "verbally abusive"; had "threatened to harm [the attorney]"; had threatened to sue the attorney; and had tried to persuade the attorney to engage in unethical conduct. 53 F.3d at 325. The district court concluded that the defendant's behavior was so egregious as to constitute a forfeiture of the right to counsel–and the court of appeals for the Eleventh Circuit agreed by affirming that decision. Id. at 326.
>
> Leggett's conduct was even more extreme than that of the defendant in McLeod. Whereas the McLeod defendant's abuse of his attorney was verbal in nature, Leggett's abuse was an unprovoked physical battery. We do not hesitate to conclude that such an attack qualifies as the sort of "extremely serious misconduct" that amounts to the forfeiture of the right to counsel. Goldberg, 67 F.3d at 1102.

Id. at 250.

Other courts have, similarly, found a forfeiture of counsel based merely on a defendant's verbal threats and harassment of his counsel. See, e.g., Bultron v. State, 897 A.2d 758, 766 (Del. 2006) (upholding finding of forfeiture based on defendant's "continuing profanity and insulting conduct" directed at appointed counsel); Carruthers, 35 S.W.2d at 548-50 (finding forfeiture of counsel based on defendant's pattern of verbal abuse and threats against series of appointed counsel, their families, and employees); Commonwealth v. Thomas, 879 A.2d 246, 258 (Pa. Super. Ct. 2005) (concluding that defendant "forfeited his right to counsel through his pattern of serious misconduct, abuse, threats, and utter failure to collaborate in his own defense."); People v. Sloane, 262 A.D.2d 431, 432 (N.Y. App. Div. 1999) (holding that defendant forfeited his right to counsel by engaging in a pattern of threatening and abusive behavior toward successive attorneys).

Here, the defendant not only verbally threatened his attorney but also physically attacked him by pushing his finger into his face. His words that he knew how to get rid of counsel were spoken in a threatening manner and uttered when a prominent Memphis attorney had recently been shot to

death by his client, see State v. Harold D. Noel, No. W2005-00160-CCA-R3-CD, 2006 WL 2729487, at *1 (Tenn. Crim. App. Sept. 25, 2006), and after the notorious Tony Carruthers trial, in which the defendant had engaged in a pattern of intimidation and verbal threats against a series of attorneys, their family and employees, and the trial judge presiding over his case. See Carruthers, 35 S.W.3d at 536-42. The defendant's unprovoked physical attack against counsel broke counsel's eyeglasses, knocked the glasses off counsel's ear, and caused counsel to experience physical pain.

We recognize that the defendant's assault against appointed counsel does not rise to the level of Leggett's assault against his trial counsel. We further recognize that the forfeiture here occurred prior to the guilt, rather than the sentencing, phase of the trial. See Leggett, 162 F.3d at 251 n.14 ("We note that the forfeiture of counsel at sentencing does not deal as serious a blow to a defendant as would the forfeiture of counsel at the trial itself. . . . We express no opinion as to whether Leggett's misconduct would have been sufficient to justify the forfeiture of counsel during the trial."). In our view, however, the defendant's physical assault against counsel, combined with his earlier verbal threat, qualifies as the sort of extremely serious misconduct sufficient to warrant the trial court's finding that the defendant forfeited his right to the assistance of counsel.

## CONCLUSION

Based on our review, we conclude that the trial court did not err by finding that the State met its burden of showing that the defendant forfeited his right to the assistance of counsel. Because we found no merit in the other issues the defendant raised in his previous direct appeal, we affirm the conviction for aggravated rape.

_____
ALAN E. GLENN, JUDGE

-6-